I do not like to give my opinion in this cause, having been concerned in it whilst at the bar; but I cannot agree with WILLIAMS, J., respecting the law of this case. The rules respecting negotiable instruments are the creatures of commerce. They depend entirely on the custom of merchants, which has applied them for the convenience of commerce to certain commercial instruments only. None but such instruments as are the subject of this custom are liable to these rules. *Page 302 
(380) With respect to bills of exchange or the like, the holder of the paper must give notice in reasonable time of nonpayment to the endorser, or he must prove on the trial that the endorser or drawer had suffered no loss for want of notice; because when a man takes a negotiable paper by endorsement, the custom raises a contract on his part to give reasonable notice of nonpayment; but if the paper he takes is not negotiable, the custom, being not made to govern such transactions, raises no contract at all concerning it, and there it is regulated by the principles of common justice only. The papers may be returned to the passer of them at any time. The receiving of them by the creditor is not any discharge of the debtor. Salk., 286. But if he has been so negligent after receiving the papers as that thereby a loss has happened, which by using common and ordinary diligence he might have prevented, and which must fall either upon himself or the passer of the paper, then the passer of the paper by proving that circumstance shall throw the loss upon the receiver of them, justice requiring that he by whose negligence the loss has happened, shall bear it; but in this case the defendants have not proved that the debtors in these papers were solvent at the time of the reception of them, and for some time after, and are now insolvent, nor any other circumstance to exempt them from taking back the papers. They have not proven any loss in consequence of any neglect in the holder, without which, or the proof of some equivalent circumstance, I am of opinion they cannot compel Brown to take them in payment. (Vide Salk., 131; 6 Mo., 81.)
The jury found for the plaintiffs, and assessed damages to £ 900.
Henderson, for the defendants, moved for a new trial on account of the misdirection of HAYWOOD, J., and had a rule to show cause.
And upon the argument for the new trial he cited 1 Term Rep., 405, 714; 4 Term Rep., 713, where it is laid down that in case of bills of exchange the payee must give notice of nonacceptance to the drawer in reasonable time, or must prove that no loss could happen to the drawer for want of notice, by proving there were no effects of his in the hands of the drawee. These authorities were cited to overturn that part of the charge to the jury which stated that the defendants were bound to take back the papers, unless he could prove a loss to have happened by the negligence of Brown, the holder, and were intended to establish the reverse of that proposition, namely, that Brown must keep the papers as payment, unless he could prove the insolvency of the debtors at the time of their reception, or before he could possibly recover of them.
Counsel for the defendants argued that though the papers (381) in question were not endorsed nor negotiable, yet, having been *Page 303 
received by Brown for the purpose of collecting the moneys due upon them, which were when collected to be applied to his own use, and credited to the defendants, that they were in all respects subject to the same rules of law as if they actually were bills of exchange and negotiable by endorsement. And of this opinion was WILLIAMS, J., clearly; and he was for granting a new trial. HAYWOOD, J., continued to be still of his former opinion, but declined opposing the new trial, having been formerly concerned as counsel for the plaintiffs. A new trial was granted accordingly; and at the next term, in March, 1797, the plaintiff's witness being not in court when the cause was called, he suffered a nonsuit.
See the next case, Alston v. Taylor.